UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 12-23868-CIV-TORRES

CONSENT CASE

ASTRID ELENA CARRILLO BARRAZA,

    Plaintiff,

v.

FRANCISCO BORJA MARTINEZ PARDO
ANA MATIAS,

    Defendants.
_____/

## DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR ALTERNATIVELY MOTION TO AMEND FINAL JUDGMENT WITH INCORPORATED MEMORANDUM OF LAW

Defendants, FRANCISCO BORJA MARTINEZ PARDO ("Pardo") and ANA MATIAS ("Matias"), through their undersigned counsel, Law Offices of Carmen Rodriguez, P.A., file this Renewed Motion for Judgment as a Matter of Law or Alternatively Motion to Amend Final Judgment pursuant to Federal Rules of Civil Procedure 50(b) and 59(a)(2), and as grounds state as follows:

Based on facts established at summary judgment and substantiated at trial, a reasonable agreement to compensate Plaintiff, ASTRID ELENA CARRILLO BARRAZZA ("Plaintiff"), existed as a matter of law consistent with the provisions of 29 C.F.R. §552.102. The pertinent facts are summarized below:

    1.    Plaintiff, a live-in domestic service employee, came with the Pardo family to the United States where she worked in the Pardo household from December 27, 2008 to October 20,

2012. *See* Pl. Depo. at p.9:19-10:6; 11:24-12:4.[1]

2. Prior to coming to the United States, Plaintiff and Pardo entered an employment contract that provided Plaintiff's terms of compensation and work hours. *See* Pl. Depo. at p.12:12-14; 12:24-13:6; [D.E. 33-1]. The contract was prepared by Pardo's attorney. The contract contained the written terms of Plaintiff's employment that were required to comply with United States labor laws. Among other things, the contract provided that Plaintiff was to work eight (8) hours each day, six (6) days per week, for $1,440.00 per month. *Id.* Indeed, in his Order denying summary judgment, the Honorable James Lawrence King found that Plaintiff and Pardo had entered into an employment contract that required Plaintiff to work exclusively for Pardo under these terms and conditions. [D.E. 35 at 1-2]. Plaintiff testified that she agreed with the terms of the contract when she signed it. *See* Pl. Depo. at p.13:7-9; [D.E. 25-1 at ¶5].

3. The contract between Plaintiff and Pardo was required by the United States Consulate in order for Plaintiff to legally work in the United States. *See* Pardo Depo. at p.15:6-16:3.[2] Plaintiff testified that she was given the contract and required to take it personally to the United States Consulate <u>without Pardo</u> to secure her work Visa. Plaintiff's testimony at trial is consistent with the requirements described in the pamphlet published by the United States government pursuant to Section 202 of the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, Public Law 110-45. Among other things, this pamphlet explains the Visa application process and

---

[1] Defendants filed Plaintiff's deposition transcript [D.E. 18-1] in support of their Motion for Summary Judgment and portions of Plaintiff's testimony were read at trial. It should be noted that the page numbers referenced herein refer to the pages of the transcript itself.

[2] Plaintiff filed Pardo's deposition transcript [D.E. 19-1] in support of her Motion for Partial Summary Judgment and portions of Pardo's testimony were read at trial.

2

legal rights of non-immigrant Visa holders under Federal immigration, labor and employment law. 8 U.S.C.S. § 1375b. As to domestic employee Visas, the pamphlet states that the employer must provide an employment contract that explains the employee's work duties, hours and pay and complies with United States law. Further, a United States Consular Officer must meet with each applicant (such as Plaintiff) to confirm that the contract complies with United States law. The pamphlet explicitly states that the employer may not be present at this meeting. U.S. Dept. of State, Bureau of Consular Affairs, Section on Rights and Protections for Temporary Workers, *Rights, Protections and Resources Pamphlet* at page 4, available at http://travel.state.gov/content/visas/english/general/rights-protections-temporary-workers.html (last visited June 19, 2015), attached as Exhibit 1.[3] It should also be noted that testimony at trial of what occurred with respect to Plaintiff's employment contract and Visa is consistent with the requirements in the United States Department of State Foreign Affairs Manual ("FAM") and on the website of the Embassy of the United States in Colombia. U.S. Dept. of State, 9 FAM §41.31 N.9.3-3, available at http://www.state.gov/documents/organization/87206.pdf (last visited June 19, 2015), attached as Exhibit 2; U.S. Embassy, Colombia, *B-1, A-3, G-5 Visas*, available at http://bogota.usembassy.gov/sca3visa.html (last visited June 19, 2015), and *Personal Interview with a Consular Officer*, available at http://bogota.usembassy.gov/scvia.html (last visited June 19, 2015), printouts attached as Exhibit 3. Thus, Pardo not only secured an attorney to prepare an agreement consistent with United States laws, but he also sought to bring Plaintiff to the United States legally

---

[3]*See Hispanic Broad. Corp. v. Educ. Media Found.*, 2003 U.S. Dist. LEXIS 24804 at *19, n.5 (C.D. Cal. Nov. 3, 2003) ("[E]xhibits which consist of records from government websites, such as the FCC website, are self-authenticating."); *Williams v. Long*, 585 F. Supp. 2d 679, 689-92 (D. Md. 2008) (finding that exhibits consisting of printed webpages from the websites of state agencies were self-authenticating "official publications").

and he and Plaintiff participated in the Visa immigration procedures that specifically included a review by the United States Consulate to ensure that the agreement complied with United States labor laws.

4. Pardo was rarely at home because his job requires frequent international travel. Plaintiff's testimony at trial established that Plaintiff <u>never</u> told Pardo that her actual work hours were any different from the hours that Plaintiff had agreed to work under the contract.

5. Likewise, Matias worked outside of the home. *See* Pl. Depo. at p. 76:25-77:1. In any event, Matias and Pardo married in about late 2011 and Matias did not live at the Pardo household until shortly before that. *See* Pardo Depo at p. 9: 10-15. However, even after Pardo and Matias married, Plaintiff was at the home alone for the majority of the day. *See* Pl. Depo. at p. 77:2-4.

6. Over the course of Plaintiff's employment, Pardo made many payments to Plaintiff that were in addition to her agreed compensation under the contract. *See, e.g.*, Pl. Depo. at p.19:15-20:21; 25:13-24; 28:23-29:8; 33:24-24:1; 39:9-44:8. Plaintiff would regularly ask Pardo for extra money, and Pardo would give Plaintiff money whenever she asked for it. *See* Pl. Depo. at p.45:9-13.

7. Trial testimony established that Plaintiff and Pardo would sit down at the end of each year and do an accounting of the money that Plaintiff earned for the work she performed and the money Pardo had paid her. *See, e.g.*, Pl. Depo. at p.45:13-16. Plaintiff kept the accounting and made entries in her own handwriting. The parties would review Plaintiff's records of the additional money Pardo had paid her. *See* Pl. Depo. at p.39:6-40:5. Plaintiff testified that each year she always concluded that she owed Pardo money from the previous year and she stated that to Pardo at their year end reviews. *See, e.g.*, Pl. Depo. at p.45:17-18. Pardo never accepted any money refund from Plaintiff. Once Plaintiff figured out how much money she owed Pardo at the end of each year, she

concluded the year between them by ripping up her records and starting a new accounting. *See* Pl. Depo. at 45:18-46:6.

8. Plaintiff testified that she still owed Pardo money when she left employment in October 2012 and informed him of same upon her departure. *See* Pl. Depo. at p.63:22-64:4. Plaintiff never paid Pardo back the money that she owed him. *See* Pl. Depo. at p.64:1-13.

9. At the close of Defendants' case at trial, Defendants moved for judgment as a matter of law on the issue of whether the employment contract between Plaintiff and Pardo was a reasonable agreement. The court denied the motion to be renewed post trial.

10. The jury returned a verdict for Plaintiff and awarded damages in the amounts specified below for the following time periods:

- December 27, 2008 to December 26, 2009 –   $2,602.41
- December 27, 2009 to December 26, 2010 –   $2,700.08
- December 27, 2010 to December 26, 2011 –   $2,780.38
- December 27, 2011 to October 20, 2012 –    $1,923.80

[D.E. 97].

11. Thereafter, the Court entered Final Judgment [D.E. 105] and an Order on Motion for Final Judgment subject to Rule 50 and Rule 59 reconsideration. [D.E. 104]. Specifically, while finding that *prima facie* entitlement to liquidated damages was established, the Court delayed final ruling on the objective good faith component until after consideration of Rule 50 issues.

## MEMORANDUM OF LAW

### Rule 50(b) Standard

Under Federal Rule of Civil Procedure 50(b), a party may renew its motion for judgment as

a matter of law after the jury renders its verdict if there is no legally sufficient evidentiary basis for a reasonable jury to find for the non-moving party. *Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231 (11th Cir. 2007). In deciding a Rule 50 motion, the district court's analysis is limited to the sufficiency of the evidence. *Chaney v. Orlando*, 483 F.3d 1221, 1228 (11th Cir. 2007). Accordingly, "[t]he jury's finding should be excluded from the decision-making calculus on a Rule 50(b) motion, other than to ask whether there was sufficient evidence, as a legal matter, from which a reasonable jury could find for the party who prevailed at trial." *Id.* at 1228.

**Regulations**

The Department of Labor ("DOL") enacted regulations regarding live-in domestic service employees. The applicable sections of 29 C.F.R. §552.102 provided as follows:

> (a) ... In determining the number of hours worked by a live-in worker, the employee and the employer may exclude, by agreement between themselves, the amount of sleeping time, meal time, and other periods of complete freedom from all duties when the employee may either leave the premises or stay on the premises for purely personal pursuits ...
>
> (b) <u>Where there is a reasonable agreement</u>, as indicated in (a) above, <u>it may be used to establish the employee's hours of work in lieu of maintaining precise records of the hours actually worked.</u> The employer shall keep a copy of the agreement and indicate that the employee's work time generally coincides with the agreement. <u>If it is found by the parties that there is **a significant deviation** from the initial agreement, a separate record should be kept for that period or a new agreement should be reached that reflects the actual facts.</u>

29 C.F.R. §552.102 (emphasis added). The DOL also enacted 29 C.F.R. §552.110 regarding record keeping requirements. In relevant part, section (b) of the applicable regulation provided that "[i]n the case of an employee who resides on the premises, records of actual hours worked are not required. Instead, the employer may maintain a copy of the agreement referred to in §552.102."

6

**Analysis**

This matter was before the Honorable James Lawrence King on summary judgment. In his Order Denying Defendant's Motion for Summary Judgment [D.E. 35], reported at *Barraza v. Pardo*, 985 F. Supp. 2d 1369 (S.D. Fla. 2013), Judge King applied 29 C.F.R. §552.102 and 29 C.F.R. §552.110 to the parties' employment contract.

Preliminarily, Judge King cited 29 C.F.R. §552.110(b), stating that "[i]n the case of an employee who resides on the premises, records of the actual hours worked are not required." [D.E. 35 at 3]. As such, "[t]he employer may instead maintain a copy of a reasonable agreement entered into between the employee and employer to establish the hours worked." *Id.* (citing 29 C.F.R. §552.102(b)). Judge King also found that there is rebuttable presumption that an employment contract is renewed when the initial contract was for a definite period of time and the employee continues to work under the contract after it expires. Applying the foregoing law to the undisputed facts, Judge King held that:

> In this case, a reasonable person would believe the parties intended to continue their agreement; there is no evidence indicating otherwise. Plaintiff continued to work for Defendant Pardo in the same conditions as under the contract or were negotiating a new contract. There is no evidence in this case that the parties attempted to change the terms of the contract. Therefore, the presumption is that the contract was renewed and in effect for the duration of Plaintiff's employment. Plaintiff has not rebutted that presumption. Thus, the contract between Plaintiff and Defendant Pardo governs the entirety of the time period of this action.
>
> Accordingly, in this case, <u>Defendants do not need to maintain precise records because the contract satisfies the FLSA's record keeping provisions for the duration of the employment relationship.</u>

[D.E. 35 at p.4 (emphasis added)]. It should also be noted that in his Order Denying Plaintiff's Motion for Partial Summary Judgment, Judge King found that this contract between Pardo and

Plaintiff "was never revised to name Defendant Matias as an employer." [D.E. 36 at p. 4].

Judge King determined that the parties' initial contract was reasonable as a matter of law. The relevant part of 29 C.F.R. §552.102(b) provided that "[w]here there is a reasonable agreement ... it may be used to establish the employee's hours of work in lieu of maintaining precise records of the hours actually worked." Based on the express language of the regulation, a contract could neither be used to establish work hours nor satisfy the FLSA's record keeping requirements unless it was a reasonable agreement. Accordingly, Judge King's holding that Defendants do not need to maintain precise records of hours worked is premised on the existence of a reasonable agreement.

Further, the court instructed the jury that a reasonable agreement must have taken into consideration all pertinent facts when agreed to, including an approximation of work hours. Pardo and Plaintiff entered the contract that was required to comply with United States labor laws in order for Plaintiff to obtain a work Visa to legally work in the United States. The contract's terms complied with United States law as required by the Consulate and are consistent with official United States Department of State requirements to obtain a non-immigrant domestic employee work Visa. It has never been disputed that the contract explicitly provided, among other things, Plaintiff's work hours per day and week. Again, testimony establishes that Plaintiff agreed with the work hours provided under the contract and never told Pardo that her actual work hours were any different. Accordingly, the parties' contract was a reasonable agreement falling specifically within 29 C.F.R. §552.102.

Where there is a reasonable agreement under 29 C.F.R. §552.102, there were two options under the remaining portion of the regulation. Specifically, "[i]f it is found by the parties that there is a significant deviation from the initial agreement, a separate record should be kept for that period

8

or a new agreement should be reached that reflects the actual facts." 29 C.F.R. §552.102(b). The regulation did not require the employer to track an employee's hours. Rather, it contemplated notice to the employer where it specifies that <u>the parties</u> must find a significant deviation.

Here, Plaintiff's testimony is that she <u>never</u> told Pardo that her actual work hours were any different from the work hours agreed under the contract. Indeed, Judge King held on summary judgment that there was no evidence that the parties attempted to change the terms of the contract. Moreover, the testimony establishes that the parties met every year to do an accounting based on Plaintiff's records and Plaintiff's conclusion and what she communicated to Pardo was always that Plaintiff owed Pardo money. There is no evidence that Plaintiff ever discussed her work hours with Pardo at the meetings or any other time. In fact, Plaintiff specifically testified that she <u>did not</u>. Plaintiff was questioned about why she did not communicate the alleged discrepancy in work time to Pardo. Plaintiff did not allege duress or fear or any grounds other than that it was "dumb" on her part. Likewise, there is no evidence that Plaintiff discussed her work hours with Matias, who was never included in the contract as an employer. Further, Matias did not live in the Pardo household until 2011 and continued to work outside of the home after she married Pardo in late 2011. In sum, there is simply no evidence that Defendants were ever aware of a deviation between Plaintiff's actual work hours and the hours agreed under her contract with Pardo.

Additionally, the jury verdict itself proves that there was no significant deviation from the parties' initial contract. The damages that the jury awarded Plaintiff for each time period reflect approximately zero (0) to one (1) hour of additional work per day than the hours agreed in the

contract.[4] A deviation of merely one (1) hour or less of work per day on average is not significant, particularly given that Pardo and Matias were rarely home, were never informed by Plaintiff of any deviation, and had no reason to believe that Plaintiff was actually working more hours than agreed. Overall, the initial contract was a reasonable agreement and there is no evidence of a significant deviation from that initial agreement, even as found by the jury. Therefore, the parties' initial contract is sufficient under 29 C.F.R. §552.102(b) and Plaintiff is not entitled to payment for any additional hours worked.

This conclusion is also consistent with reported decision, *McCune v. Oregon Senior Servs. Div.*, 643 F. Supp. 1444 (D. Or. 1986). In *McCune v. Oregon Senior Servs. Div.*, 643 F. Supp. 1444 (D. Or. 1986), plaintiffs were live-in attendants for disabled persons who paid for their care with federal and state assistance and defendants were state agencies and administrators of the program. Plaintiffs were alleging FLSA minimum wage violations and the relevant issue before the court was plaintiffs' claim that they should be paid for all hours worked.

By way of background, the Senior Services Division ("SSD"), a state agency, set policies for paying live-in attendants. *Id.* at 1446. SSD implemented rules limiting attendants' work to eight (8) hours per day and issued a monthly invoice to each attendant stating the maximum hours and pay for each service provided. *Id.* at 1447. However, plaintiffs claimed that they were in clients' homes for eighteen (18) to twenty (20) hours per day and their average wage fell below the minimum wage.

---

[4] Based on simplified and approximate calculations for illustrative purposes in this motion only. For example, for the 1 year period of 12/27/09 to 12/26/10, the jury awarded $2,700.08. $2,700.08 divided by $7.25 (applicable minimum wage) is 372.4. 372.4 divided by 52 (weeks in a year) equals 7.16 hours per week. Similarly, for the 43 week period of 12/27/11 to 10/20/12, the jury awarded $1,923.80. $1,923.80 divided by $7.67 (applicable minimum wage) equals 250.8. 250.8 divided by 43 weeks equals 5.8 hours per week.

*Id.*

Applying 29 C.F.R. §552.102, the court reasoned that "[t]he written agreement between each plaintiff and SSD and the SSD invoices provide for a maximum number of authorized hours. Provided that the agreements are reasonable, they should be upheld." *Id.* at 1451-52. The court also found that defendants would be required to pay for more work hours than authorized, but only if defendants knew that plaintiffs were working more hours than authorized and allowed plaintiffs to perform the work without objection. *Id.* at 1451. Overall, the court held that plaintiffs were entitled to payment only for authorized hours, to the extent that SSD limitations were reasonable, and to the extent that defendants did not knowingly allow plaintiffs to work additional hours. *Id.* at 1452. The Ninth Circuit affirmed the district court's judgment on appeal. *See McCune v. Oregon Senior Servs. Div.*, 894 F.2d 1107 (9th Cir. 1990).

Here, the parties' contract was a reasonable agreement as a matter of law as found by Judge King on summary judgment. Further, the testimony establishes that Defendants were not aware that Plaintiff was working more hours than agreed in the contract, and certainly not any "significant deviation" from their agreement. Applying the reasoning of the court in *McCune* as well as the plain language of 29 C.F.R. §552.102 to these facts, Plaintiff is not entitled to payment for performing more work than authorized under the contract.

As to the objective component of good faith, the evidence clearly establishes that Defendants had reasonable grounds for believing that they did not violate the law. Pardo did everything he reasonably could to ensure that he brought Plaintiff with him from Colombia to the United States in full compliance with United States law. Pardo consulted an attorney and the United States Consulate and his attorney drafted a contract in compliance with United States law as required by

11

the Consulate for Plaintiff to obtain a Visa. The contract itself proves that its terms are in full compliance with United States labor law. Moreover, the terms of the contract and Plaintiff's testimony that she personally brought the contract to the Consulate for review for issuance of her Visa are consistent with the United States government's requirements for obtaining a non-immigrant domestic employee Visa. After coming to the United States, the parties never tried to change the terms of the contract or enter into a new agreement. As stated above, Judge King held that "a reasonable person would believe the parties intended to continue their agreement; there is no evidence indicating otherwise ...Therefore, the presumption is that the contract was renewed and in effect for the duration of Plaintiff's employment. Plaintiff has not rebutted that presumption." [D.E. 35 at 4]. Matias was never added to the contract as an employer and there is no evidence that she was aware that Plaintiff's hours were different than what was agreed in her contract with Pardo. Based on the testimony and the fact that the contract itself complies with United States law as required by the Consulate to issue Plaintiff a Visa, Defendants have conclusively proven the objective good faith component.

Finally, Plaintiff has cited *Leever v. Carson City*, 360 F.3d 1014 (9th Cir. 2004) in her arguments on this matter. [*See* D.E. 88]. However, *Leever* is inapplicable because the facts of this case are distinguishable. In *Leever*, the agreement at issue provided a flat-fee salary differential to the plaintiff and others in her job position without considering the approximate number of hours that they worked. The *Leever* contract was specifically missing the required terms of employment. Here, by contrast, the parties' contract provided that Plaintiff would work eight (8) hours per day and six (6) days per week. Plaintiff's testimony is that she agreed with the terms of the contract when she signed it and that they were acceptable to her. Thus, *Leever* does not apply.

## Conclusion

WHEREFORE, based on the undisputed facts established in these proceedings, the Court should enter Judgment as a Matter of Law for Defendants because the employment contract between Plaintiff and Pardo was a reasonable agreement as a matter of law, there was no significant deviation between the hours that Plaintiff actually worked and the hours agreed under the contract, and neither Pardo nor Matias knowingly allowed Plaintiff to work more hours. In light of the foregoing, Defendants, FRANCISCO BORJA MARTINEZ PARDO and ANA MATIAS, respectfully request that this Court grant their Renewed Motion for Judgment as a Matter of Law and find that was a reasonable agreement to compensate Plaintiff, ASTRID ELENA CARRILLO BARRAZA, for her work at the home of Defendant, FRANCISCO BORJA MARTINEZ PARDO. Alternatively, Defendants request that this Court amend final judgment and direct the entry of a new judgment finding that Plaintiff is not entitled to liquidated damages on the basis that Defendants have established objective good faith.

Dated: June 24, 2015
Miami, Florida

Respectfully submitted,

s/Carmen Rodriguez
Carmen Rodriguez (Florida Bar No. 710385)
Attorney's Email Address: crpa@crlaborlawfirm.com
Law Offices of Carmen Rodriguez, P.A.
Palmetto Bay Centre
15715 South Dixie Highway, Suite 411
Miami, Florida 33157-1884
Telephone: (305) 254-6101
Facsimile: (305) 254-6048
Attorneys for Defendants

## CERTIFICATE OF SERVICE

**I hereby certify** that a true and correct copy of the foregoing was served by electronic mail on June 24, 2015 on all counsel or parties of record on the Service List below.

s/Carmen Rodriguez
Carmen Rodriguez

## SERVICE LIST

| | |
|---|---|
| Jamie H. Zidell, Esquire | Carmen Rodriguez, Esquire |
| Florida Bar No. 10121 | Florida Bar No. 710385 |
| E-mail address: zabogado@aol.com | E-mail address: crpa@crlaborlawfirm.com |
| 300 71st Street, Ste. 605 | Law Offices of Carmen Rodriguez, P.A. |
| Miami Beach, Florida 33141 | 15715 S. Dixie Highway, Suite 411 |
| Telephone: (305) 865-6766 | Miami, Florida 33157-1884 |
| Facsimile: (305) 865-7167 | Telephone: (305) 254-6101 |
| Attorney for Plaintiff | Facsimile: (305) 254-6048 |
| | Attorneys for Defendants |